UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SARAH BIRDSONG, on behalf of herself and all
others similarly situated,

                      Plaintiff,                   **MEMORANDUM AND ORDER**
                                                                               16-CV-4435 (RRM) (PK)
   -against-

NURTURE, INC. d/b/a HAPPY FAMILY,

                      Defendant.
----------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Defendant Nurture, Inc. ("Nurture") sells infant and baby food products that are marketed, labeled, and sold as "Organic." Sarah Birdsong, on behalf of herself and all others similarly situated, brings this putative class action against Nurture, alleging that Nurture misled consumers about the ingredients of its Happy Family brand products (the "Products"). Specifically, Birdsong alleges that the packaging for these products contains the representation "Organic" when in fact the Products contain ingredients that the United States Department of Agriculture ("USDA") prohibits in organic products. Nurture moves to dismiss this entire action claiming that, *inter alia*, Birdsong's claims are preempted by the Organic Foods Production Act of 1990, U.S.C. §§6501–6523 (the "OFPA"), and that Birdsong lacks standing to seek injunctive relief. In the alternative, Nurture argues that this case should be stayed under the doctrine of primary jurisdiction. Finding that Birdsong's claims are preempted, the Court grants Nurture's motion to dismiss the complaint in its entirety.

**BACKGROUND**[1]

Birdsong alleges that, in 2015, she purchased a variety of Happy Family brand products through various channels, such as C Town, Met Foods, and Diapers.com. (Compl. (Doc. No. 1) at ¶ 19.) Birdsong claims that her purchases included at least the following products: HappyBaby Probiotic Baby Cereal, HappyBaby Superfood Puffs, HappyTot Greek Yogurt, HappySqueeze Greek Yogurt, and HappyTot Plus [Pouch]. (*Id.*)[2] In addition to containing the word "Organic," the Products also display the following seal:[3]



Birdsong asserts that she purchased the Products after seeing, and in reliance on, the "Organic" representation on the Products' label, and because of this representation, was led to believe that the Products were organic. (*Id.*) Birdsong contends that the Products are not organic as defined under federal law because they contain certain prohibited synthetic ingredients. (*See*

---

[1] The following facts are drawn from the complaint and the materials that the Court has judicially noticed, and they are assumed to be true for purposes of this Memorandum and Order. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (finding that a district court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff); *see also In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 12-MD-2413, 2013 WL 4647512, at *4 (E.D.N.Y. Aug. 29, 2013) (taking judicial notice of "contents of the Federal Register and Code of Federal Regulations," "agency letters, policy and guidance documents, websites, and other agency data made available to the public," and "state laws and regulations"); *Porazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 41–12 (S.D.N.Y. 2011) (taking judicial notice of agency guidance documents, letters, and other documents available through FDA's website).

[2] Birdsong does not allege that she purchased any of the other eighteen Happy Family brand products named in the complaint. Those products include: HappyBaby Puffs, HappyBaby Rice Cakes, HappyBaby Superfood Munchies, HappyBellies Baby Cereal, HappyBellies Brown Rice Baby Cereal, HappyBellies Multi-Grain Baby Cereal, HappyBellies Oatmeal Baby Cereal, HappyChild Super Nutrition Shakes, HappyMama Prenatal [Pouch], HappyMunchies Cheese & Veggie Snack, HappyMunchies Puffed Corn Snacks, HappyMunchies Rice Cakes, HappyPuffs Puffs, HappySqueeze Coco [Pouch], HappySqueeze Fruit & Veggie Twist, HappySqueeze Super [Pouch], HappyTot Coconut [Pouch], and HappyTot Grow & Shine Toddler Milk. (Compl. at ¶ 44.)

[3] *Available at* https://www.ams.usda.gov/rules-regulations/organic/organic-seal. The Court has reproduced this image from the USDA website for clarity purposes, but it is identical to the image appearing on the Products as shown in Exhibit 1 to Birdsong's complaint.

2

*id.* at ¶¶ 42–45.)[4]  Birdsong further claims that had she known that the Products were not "organic," she would not have purchased them.  (*Id.* at ¶ 22.)  However, she "would consider" purchasing the Products in the future if the Products were reformulated so as to make the "Organic" representation truthful.  (*Id.* at ¶ 24.)

Birdsong alleges that Nurture is liable under N.Y. Gen. Bus. Law §§ 349–350 and the common law of New York for breach of express warranty and unjust enrichment.  (*See id.* at ¶¶ 89–126.)  All of these claims are based on the alleged false labeling of the Products as "Organic."  Birdsong concedes that the Products have been certified "Organic" by a USDA-accredited agent.  (11/3/16 Tr. (Doc. No. 19-1) at 22:13.)  Birdsong does not allege that Nurture fraudulently deceived the certifying agent or intentionally substituted prohibited ingredients subsequent to the certification.  Rather, Birdsong alleges that, notwithstanding their certification, the Products mislead consumers because they contain synthetic ingredients that are allegedly prohibited under the OFPA.  Nurture moves to dismiss Birdsong's claims in their entirety.

## STANDARD OF REVIEW

In order to withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain facts sufficient "'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011)

---

[4] These allegedly prohibited synthetic ingredients in the Products include sodium selenite, taurine, docosahexaenoic acid single cell oil, arachidonic acid single cell oil, ascorbyl palmitate, calcium pantothenate, choline bitartrate, choline chloride, sodium ascorbate, retinyl acetate, cholecalciferol, phytonadione, potassium phosphate, inositol, manganese sulfate, retinyl palmitate, folic acid, thiamine mononitrate, dl-alpha tocopheryl acetate, alpha tocopheryl acetate, d-alpha-tocopheryl acetate, tocopherayl acetate, dimagnesium phosphate, sodium polyphosphate, and dicalcium phosphate dehydrate.  (Compl. at ¶ 45.)

(quoting *Iqbal*, 556 U.S. at 678). The Court assumes the truth of the facts alleged, and draws all reasonable inferences in the nonmovant's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). A complaint need not contain "detailed factual allegations," but it must contain factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Where a party asserts a federal preemption defense, "[a] district court may grant a motion to dismiss based on federal preemption, if the defense can easily be determined from the pleadings." *Aaronson v. Am. Med. Sys., Inc.*, No. 09-CV-2487 (NGG), 2010 WL 3603618, at *1 (E.D.N.Y. Sept. 7, 2010) (internal citation and quotation marks omitted); *see also Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 362–63 (S.D.N.Y. 2008), *aff'd,* 337 F. App'x 7 (2d Cir. 2009).

## DISCUSSION

I. **Federal Preemption of State Law Claims**

a. **Conflict Preemption**

Nurture argues that Birdsong's state law claims pose an obstacle to the achievement of the OFPA's objectives and thus are preempted by federal law. Under the Supremacy Clause of the United States Constitution, "state laws that conflict with federal law are without effect" and are preempted. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008). In interpreting the presence and scope of preemption, a court starts with the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *see Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41–42 (2d Cir. 1990) ("[C]onsumer protection law is a field traditionally regulated by the states."). That said, "[t]he key to the preemption inquiry is the intent of Congress." *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir.

2010). Congress may indicate its intent to preempt state law explicitly, through a federal statute's express language, or implicitly, through the scope, structure, and purpose of the federal law. *Altria*, 555 U.S. at 76 (internal citation omitted). Nurture limits its argument to conflict preemption – specifically, obstacle preemption – which applies where state law "conflicts with federal law such that . . . the [state] law is an obstacle to the achievement of federal objectives." *Town of Clarkstown*, 612 F.3d at 104 (internal citation omitted).

A brief overview of the OFPA and its regulatory history and scheme is warranted.

### b. The Organic Foods Production Act

The OFPA establishes uniform national standards for the sale and labeling of organically produced agricultural products, and creates a federal certification program through which agricultural producers may become certified to sell and label products as "Organic." When it created the OFPA, Congress noted that the organic food trade was being "hampered by a lack of consistent standards for production." S. Rep. No. 101-357 (1990). The legislative history reflects the concern at the time that "the differing State laws have [] led to consumer confusion and troubled interstate commerce." *Id.* In such circumstances, Congress found that "[e]ven the most sophisticated organic consumer finds it difficult to know, with certainty, what the term 'organic' really means." *Id.* With that in mind, Congress articulated three main objectives in passing the OFPA: "(1) to establish national standards governing the marketing of certain agricultural products as organically produced products; (2) to assure consumers that organically produced products meet a consistent standard; and (3) to facilitate interstate commerce in fresh and processed food that is organically produced." 7 U.S.C. § 6501. To carry out these objectives, the OFPA empowers the Secretary of Agriculture (the "Secretary") to "establish an organic certification program for producers and handlers of agricultural products that have been

5

produced using organic methods." 7 U.S.C. § 6503(a). Pursuant to the OFPA, the USDA adopted an extensive set of implementing regulations, known as the National Organic Program (the "NOP"), defining which agricultural products qualify as "Organic." *See* 7 C.F.R. §§ 205.1– 205.699. Thus, the OFPA effectively federalizes the term "Organic" – an agricultural product is, and may be labeled as, organic if and only if it has been produced in accordance with federally approved standards for what that term is to mean.

> In order to be sold or labeled as "Organic" under the OFPA, a product must:
>
> (1) have been produced and handled without the use of synthetic chemicals, except as otherwise provided in this chapter;
>
> (2) except as otherwise provided in this chapter and excluding livestock, not be produced on land to which any prohibited substances, including synthetic chemicals, have been applied during the 3 years immediately preceding the harvest of the agricultural products; and
>
> (3) be produced and handled in compliance with an organic plan agreed to by the producer and handler of such product and the certifying agent.

7 U.S.C. § 6504. The OFPA empowers the Secretary to "establish a National List of approved and prohibited substances that shall be included in the standards for the organic production and handling established under [the OFPA] in order for such products to be sold or labeled as organically produced under [the statute]." 7 U.S.C. § 6517(a).

The Secretary relies on USDA-accredited certifying agents to certify that organic operations "produce and handle" products in compliance with the OFPA and the NOP regulations. *See, e.g.*, 7 U.S.C. §§ 6504–6505; 7 C.F.R. §§ 205.300(a), 205.302(c). Specifically, in order to sell, label, or represent products as "Organic," the producer or handler of an organic operation must develop an "organic system plan," to be approved by the certifying agent, which lists, *inter alia*, "each substance to be used as a production or handling input" and any "[a]dditional information deemed necessary by the certifying agent to evaluate compliance with

6

the regulations." 7 C.F.R. § 205.201. Certification is to be granted only "[i]f the certifying agent determines that the organic system plan and all procedures and activities of the applicants' operation are in compliance with [the OFPA] and that the applicant is able to conduct operations in accordance with the plan." 7 C.F.R. § 205.404(a); *see also* 7 C.F.R. § 205.2 (defining "certification" or "certified" as "[a] determination made by a certifying agent that a production or handling operation is in compliance with the [OFPA] and the regulations"). In sum, use of an "Organic" label requires certification, which may be issued only by a federally approved certifying agent who ensures that organic operations "produce and handle" products in compliance with the uniform federal standard set forth in the OFPA and the NOP regulations.

Products certified as "Organic" under the OFPA must contain at least 95% organically produced ingredients by weight; the other 5% of ingredients can be "non-organically produced agricultural products produced consistent with the National List."[5] 7 C.F.R. § 205.301; *see also* 7 U.S.C. § 6505. Under the OFPA, if the NOP's Program Manager "has reason to believe that a certified operation has violated or is not in compliance with the [OFPA]" or a "certifying agent or a State organic program's governing State official fails to take appropriate action to enforce the [OFPA] or regulations," then "[t]he Program Manager may initiate suspension or revocation proceedings against a certified operation." 7 C.F.R. § 205.660(b). If an operation fails to comply with the OFPA, it is subject to a civil penalty of up to $10,000 per violation and the possibility of a five-year prohibition from re-certification. *See* 7 U.S.C. § 6519(c). Additionally, any action by the Secretary or certifying agent that "adversely affects" a person or "is

---

[5] Depending on the percentage of organically produced ingredients in products, products may be labeled as "100 percent organic," "Organic," or "made with organic ingredients." 7 C.F.R. § 205.301(a)–(c). For example, products containing 100 percent organically produced ingredients may represent themselves as "100 percent organic," while products made with "at least 70 percent organically produced ingredients" may represent themselves as "made with organic [ingredients]." 7 C.F.R. § 205.301(a), (c). Here, the Products were all sold, labeled, and represented as "Organic."

7

inconsistent with the organic certification program" is appealable to the Administrator for the Agricultural Marketing Service, and final agency decisions are appealable to the district court. 7 C.F.R. § 205.680(a), (c); 7 U.S.C. § 6250.[6]

### c. Applicable Case Law

Here, Birdsong claims that the Products are falsely labeled as "Organic" on the theory that they contain ingredients that federal law bans from organic foods. However, USDA's accredited certifying agent has already certified that the Products are properly labeled as "Organic" as a matter of federal law – a fact that the parties do not dispute. The central question before the Court is whether Birdsong's state law claims, which seek to impose liability on Nurture for an allegedly misleading representation that is permitted by a USDA-accredited agent, are preempted by the scope, structure, and purpose of the OFPA.

The Second Circuit has yet to address the issue of the OFPA's preemptive scope. However, two district courts in this Circuit explored the issue and reached divergent results. *See, e.g.*, *Marentette v. Abbott Labs., Inc.*, 201 F. Supp. 3d 374 (E.D.N.Y. 2016); *Segedie v. Hain Celestial Grp., Inc.*, 14-CV-5029 (NSR), 2015 WL 2168374, at *1 (S.D.N.Y. May 7, 2015). In doing so, the courts in *Marentette* and *Segedie* discussed the Eighth Circuit's reasoning in *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781 (8th Cir. 2010) – the only circuit court to address the OFPA's preemptive scope. *See Marentette*, 201 F. Supp. 3d at 379–80 (applying *Aurora*'s reasoning and concluding that plaintiff's state law claims alleging false labeling in violation of New York consumer protection statutes, breach of warranties, and unjust enrichment were an obstacle to the purpose of the OFPA); *Segedie*, 2015 WL 2168374, at

---

[6] States are permitted to establish their own certification programs, but those programs must be approved by the USDA before taking effect. *See* 7 U.S.C. §§ 6503(b), 6507(a). Nonetheless, certification, even under federally approved state programs, must be carried out only by certifying agents who have been federally accredited. 7 U.S.C. §§ 6503(d), 6513(a), 6514.

8

*1 (rejecting *Aurora* and concluding that plaintiff's state law claims alleging false labeling in violation of New York and California consumer protection statutes, breach of warranties, and unjust enrichment were not an obstacle to the purpose of the OFPA).

In *Aurora*, consumers asserted state law claims against organic-certified dairy producers and retailers, alleging, *inter alia*, that their labeling of a milk product as "Organic" was misleading because the producer's processes did not comply with the OFPA's requirements for "Organic" products. *Aurora*, 621 F.3d at 787–90. The Eighth Circuit found the state law claims were impliedly preempted because they conflicted with the OFPA and the exclusive role of the USDA-accredited certifying agents in certifying that products complied with the OFPA and were thus "Organic." *Id.* at 796–97. The court distinguished "state law challenges to the certification determination itself," which would be preempted, from "state law challenges to the facts underlying certification," which would not be preempted. *Id.* In explaining this distinction, the Eighth Circuit stated the following:

> Congress did not intend for requirements such as [those governing livestock practices] to preclude a State from prosecuting a certified organic producer for violating the State's animal cruelty statute by abusing its livestock. Certification relies upon inspection and observation of only a portion of a producer's operations, and thus, the evidence which supported certification could, and very likely would, be different from the evidence which supports a state cause of action [for engaging in animal cruelty].

*Id.* at 798. *Aurora* also stressed that any added assurance from state law claims bolstering consumer protection "comes at the cost of the diminution of consistent standards, as not only different legal interpretations, but also different enforcement strategies and priorities could further fragment the [OFPA's] uniform requirements," and lead to an increase in consumer confusion and troubled interstate commerce. *Id.* at 796–97.

In both *Marentette* and *Segedie*, as here, the plaintiffs alleged that the defendants' products were falsely labeled as "Organic" because they allegedly contained ingredients that were prohibited under the OFPA. *See Marentette*, 201 F. Supp. 3d at 381; *Segedie*, 2015 WL 2168374, at *5. Additionally, in both cases, a USDA-accredited certifying agent had already certified that the products were properly labeled as "Organic" as a matter of federal law. *See Marentette*, 201 F. Supp. 3d at 381; *Segedie*, 2015 WL 2168374, at *5. Thus, as here, the plaintiffs' claims were "state law challenges to the certification determination itself." *See Marentette*, 201 F. Supp. 3d at 381; *Segedie*, 2015 WL 2168374, at *5. In her opposition to Nurture's motion to dismiss, Birdsong urges this Court to adopt the reasoning in *Segedie* and disregard the reasoning in *Marentette*.

In *Segedie*, the court rejected *Aurora*'s reasoning and found that any divergence among courts in interpreting state law challenges to the certification determination would not be "so great as to create an 'obstacle' to" the OFPA's objectives of establishing consistent national standards and facilitating interstate commerce. *Segedie*, 2015 WL 2168374, at *6. Additionally, the court determined that the OFPA's express preemption of state organic certification regimes suggests that state tort and consumer protection claims were not impliedly preempted, particularly because the OFPA does not provide private remedies for consumers. *Id.* at *6–7. Thus, *Segedie* rejected the *Aurora* court's concerns of obstacle preemption and found that direct challenges to the certification determination did not run contrary to the OFPA's purpose of assuring consumers that organically produced products meet a consistent standard. *Id.*

In turn, the court in *Marentette* adopted the reasoning in *Aurora* and found that the OFPA's broad statements of purpose, thorough regulatory scheme, and comprehensive enforcement scheme all militate in favor of finding that direct challenges to a USDA-approved

certification determination would be an obstacle to the implementation of the OFPA and to the achievement of its objectives. *See Marentette*, 201 F. Supp. 3d at 382–84. Like *Aurora*, the *Marentette* court found that allowing plaintiffs' state law challenges seeking to overturn a USDA-accredited certifying agent's decision would subject the OFPA's uniform national standards to challenges under the statutes and common laws of all fifty states. *Id.* The court in *Marentette* disagreed with the *Segedie* court's determination that bolstering consumer protection through state law claims would present only "a mere risk" of judicial divergence in interpreting the national standards. *Id.* Indeed, the court in *Marentette* noted that in the time since the *Segedie* decision, a sharp divergence in interpreting the national standards had already emerged: courts in California and New York rejected plaintiffs' attempts to challenge federal certification decisions, while the court in *Segedie* allowed state law challenges to proceed.[7] *See id.*; *Ctr. for Envtl. Health v. Perrigo Company PLC*, No. RG16820116, at 4 (Cal. Super. Nov. 7, 2016) (adopting *Aurora* and finding direct challenges to certification decision were preempted); *see also Segedie,* 2015 WL 2168374, at *6.

The Court finds the reasoning of both *Aurora* and *Marentette* to be persuasive. Accordingly, as discussed below, Birdsong's state law claims are preempted.

### d. Application to Birdsong's Claims

Like the defendants' products in *Marantette* and *Segedie*, Nurture's Products have been certified as "Organic" by a USDA-accredited certifying agent, and thus Nurture's labeling of the

---

[7] The Court declines Birdsong's invitation to follow the decisions in *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889 (N.D.C.A. 2012) and *Brown v. Hain Celestial Grp., Inc.*, No. 11-CV-3082 (LB), 2012 WL 3138013 (N.D.C.A. Aug. 1, 2012). Unlike the products at issue here, the cosmetic products in *Brown* had not been certified organic by a USDA-accredited certifying agent, thus the plaintiffs in *Brown* were not challenging a certifier's decision. *See Brown*, 2012 WL 3138013, at *8–9. In turn, because the court in *Jones* failed to discuss the role of accredited certifying agents, its holding that state law claims challenging a certification determination were not preempted is less than persuasive. *See Jones*, 912 F. Supp. 2d at 895. Accordingly, the Court finds the legal analysis in *Jones* unpersuasive and the facts in *Brown* distinguishable to Birdsong's direct challenge to the certifier's decision, which is at issue in this case.

Products as "Organic" is permitted as a matter of federal law.  Birdsong seeks to attack the validity of the certifying agent's decision by alleging that, notwithstanding the certification that Nurture was in compliance with the OFPA, Nurture misrepresents the Products as "Organic" because they contain allegedly prohibited ingredients.[8]  As the court in *Marentette* found, the OFPA's broad statements of purpose, thorough regulatory scheme, and comprehensive enforcement scheme all militate in favor of finding that Birdsong's direct challenge to Nurture's certification would be an obstacle to the implementation of the OFPA and to the achievement of its objectives.

As noted above, the OFPA was enacted to "establish national standards" for the marketing of products as organically produced, to "assure consumers that organically produced products meet a consistent standard," and to "facilitate interstate commerce" in organically produced foods.  7 U.S.C. § 6501.  As Congress recognized when establishing these objectives, a uniform national standard for marketing organic produce serves to boost consumer confidence that an "Organic" label guarantees compliance with particular practices that are approved by a USDA-accredited certifying agent "so that consumers are sure to get what they pay for." S. Rep. No. 101–357, at 289 (1990).  Allowing each state's consumer protection statute to serve as a vehicle to challenge a USDA-certified "Organic" product's compliance with the OFPA would lead to conflicting definitions of "Organic" and "the diminution of consistent standards." *See Aurora*, 621 F.3d at 796.  These differences in interpretation and enforcement would naturally lead to an increase in the "'consumer confusion and troubled interstate commerce . . . that characterized the period before the OFPA." *See id.* at 796–97 (citing S. Rep. No. 101–357

---

[8] A large portion of the parties' briefs discuss whether the Products contain ingredients that are prohibited by the National List.  However, given that the Court's finding of preemption results in the dismissal of all of Birdsong's claims, the Court does not address the parties' other arguments.

12

(1990)); *see also Marentette*, 201 F. Supp. 3d at 383–84 (finding that permitting plaintiffs' state law claims would lead to the possibility of conflicting definitions of "Organic," which would directly conflict with the Senate Report's "emphasis on *national* uniformity"). Uniform standards "provide a level playing field" for organic growers, allowing them to effectively market their products across state lines by eliminating conflicting regulatory regimes. S. Rep. No. 101–357, at 290. Permitting Birdsong's state law claims challenging the certifier's decision would be an obstacle to achieving the OFPA's broad statements of purpose and would run counter to Congress's concern that piecemeal state laws defining "organic" sow consumer confusion.

Birdsong argues that her state law claims do not challenge the OFPA or Nurture's certification, but rather Nurture's compliance with the OFPA itself. This argument rests on the assumption that compliance and certification are separate requirements under the OFPA and that certifying agents do not determine compliance with the regulations. As the courts in *Aurora* and *Marentette* recognized, this claim is unavailing and contrary to the OFPA's structure and purpose. Birdsong's "argument requires the illogical conclusion that Congress intended for the 'Organic' label to not have any actual meaning, aside from informing consumers that a product may or may not be organic." *Marentette*, 201 F. Supp. 3d at 382, n.16; *see Aurora*, 621 F.3d at 796 ("Compliance with the regulations may lead to certification, and failure to comply with the regulations may lead to nonapproval, suspension, or revocation of certification . . . but compliance with the regulations is not a separate requirement independently enforceable via state law." (internal citation omitted)). Indeed, the OFPA's regulatory scheme defines "certification" as "[a] determination made by the certifying agent that a production or handling operation *is in compliance* with the [OFPA] and the regulations." 7 C.F.R. § 205.2 (emphasis added); *see also*

7 C.F.R. § 205.404(a) (stating that certification is to be granted only "[i]f the certifying agent determines that the organic system plan and all procedures and activities of the applicants' operation *are in compliance with* [the OFPA] and that the applicant is able to conduct operations in accordance with the plan" (emphasis added)). In order to sell, label, or represent products as "Organic," the producer or handler of an organic operation must develop an organic plan, to be approved by the certifying agent, which lists, *inter alia*, "each substance to be used as a production or handling input" and any "[a]dditional information deemed necessary by the certifying agent to evaluate compliance with the regulations." 7 C.F.R. § 205.201. In this way, the OFPA directs federally approved certifying agents to ensure that organic operations "produce and handle" products in compliance with the uniform federal standard set forth in the OFPA and the NOP regulations. Thus, Birdsong's contention that certification does not establish OFPA compliance is contrary to the OFPA's structure and purpose.

Relying on the district court's decision in *Segedie* and the Supreme Court's decision in *Wyeth*, Birdsong also argues that state law claims bolstering consumer protection do not present an obstacle to a federal law that provides no remedy to harmed consumers. *See Segedie*, 2015 WL 2158374, at *4 ("There is no mechanism to provide restitution or any other remedy to customers harmed by violations of the OFPA . . . ."); *see also Wyeth*, 555 U.S. at 579. However, as discussed above, state law claims serving as a direct challenge to the certification determination itself conflict with the OFPA. Charged with carrying out the NOP, the certifying agent is fundamental to establishing a national standard, which in turn assures consumers that organically produced products meet a consistent standard. Permitting direct challenges to certification determinations through state law would deeply undermine or invalidate existing certification decisions made under the auspices of the OFPA by creating state-by-state

14

determinations of what constitutes a proper "Organic" certification – the very "patchwork" of standards that the OFPA sought to eliminate. *See Aurora*, 621 F.3d at 796 (finding a national standard "would be deeply undermined by the inevitable divergence in applicable state laws as numerous court systems adopt conflicting interpretations of the same provisions of the OFPA and NOP"); *Marentette*, 201 F. Supp. 3d at 384 (same); *see also Perrigo*, No. RG16820116, at 4 (same).

With that in mind, the OFPA establishes an enforcement scheme that empowers the NOP's Program Manager and USDA-accredited certifying agents to investigate certified operations suspected of noncompliance and to suspend or revoke a certification. 7 C.F.R. §§ 205.606(a), b(1), 205.661(a); *see also* 7 U.S.C. § 6519(b). The enforcement scheme also allows dissatisfied consumers to appeal a product's organic certification to the Secretary, who maintains national uniformity in interpreting the organic regulations. *See* 7 U.S.C. § 6520(b). Operations found to have sold or labeled products in violation of the OFPA or NOP face civil penalties of up to $10,000 per violation and the possibility of a 5-year prohibition from re-certification. 7 U.S.C. § 6519(c)(1), (3). Moreover, the NOP's website invites the public to report noncompliance to the NOP Compliance and Enforcement Division of the Agricultural Marketing Service. *See Organic Enforcement*, https://www.ams.usda.gov/services/enforcement/organic (last visited Sept. 28, 2017).

Any added assurance from state law claims bolstering consumer protection "comes at the cost of the diminution of consistent standards, as not only different legal interpretations, but also different enforcement strategies and priorities could further fragment the uniform requirements." *Aurora*, 621 F.3d at 796–97 (citing 7 U.S.C. § 6501(2)); *see Marentette*, 201 F. Supp. 3d at 384. *But see Segedie*, 2015 WL 2168374, at *6–7 (rejecting *Aurora* and finding that any divergence

among courts in permitting private remedies would not be "so great as to create an 'obstacle' to" the OFPA's objectives of establishing consistent national standards and facilitating interstate commerce). On the other hand, state law consumer claims that challenge "the facts underlying certification," *see Aurora*, 621 F.3d at 796–97, or allege that a defendant "intentionally and knowingly" substituted prohibited ingredients into certified "Organic" products or fraudulently received a certification would not be preempted by the OFPA, *see Quesada v. Herb Thyme Farms, Inc.*, 62 Cal. 4th 298, 321 (2015) (concluding that "claims of intentional commingling and fraudulent substitution" of non-organic products with certified "Organic" products were not preempted).[9] Birdsong does not bring those claims here.

Similarly, Birdsong points to the OFPA's express provision preempting state organic certification regimes to argue that state tort and consumer protection claims are not preempted. However, an express "pre-emption provision, by itself, does not foreclose (through negative implication) 'any possibility of implied [conflict] pre-emption.'" *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869 (2000); *see also Arizona v. United States*, 567 U.S. 387, 406 (2012) ("[T]he existence of an 'express preemption provisio[n] does *not* bar the ordinary working of conflict preemption principles" or impose a "special burden" that would make it more difficult to establish the preemption of laws falling outside the clause."); *Town of Clarkstown*, 612 F.3d at 104 ("Even where a federal law contains an express preemption clause, the court still may be required to consider implied preemption . . . ."). Accordingly, where, as here, plaintiff's state

---

[9] In *Quesada*, the defendant herb-growing operation had multiple farms throughout California, most of which used conventional growing methods to produce non-organic herbs, but one of which used organic processes and had been properly certified as "Organic." *Quesada*, 62 Cal. 4th at 303. Unlike the plaintiff in *Aurora*, the plaintiff in *Quesada* alleged that the defendant "knowingly and intentionally" either mixed its non-organic herbs with organic herbs or sold its non-organic herbs at an organic premium price in a container exhibiting the USDA-certified "Organic" seal. *Id.* at 320. Based on these facts, but finding the decision in *Aurora* to be "instructive," the *Quesada* court concluded that "claims of intentional commingling and fraudulent substitution" of non-organic products with certified "Organic" products were not preempted. *Id.* at 321.

law claim poses a direct obstacle to the achievement of the OFPA's objective, the existence of an express preemption provision in the OFPA does not foreclose the possibility of conflict preemption.

**CONCLUSION**

For the reasons set forth herein, the Court finds that Birdsong's claims are preempted and grants Nurture's motion to dismiss the complaint (Doc. No. 17) in its entirety.

SO ORDERED.

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

Dated: Brooklyn, New York
       September 28, 2017